*1032 OPINION.
Seawell :
As a result of the motion granted for a severance of issues in this case, only one question is now presented and that a question of law. This issue may be made clear by stating briefly what occurred in the transactions before us. In 1915 petitioner received certain shares of stock in a manner that represented a cost or acquisition value to him at that time of $347.50 per share. On November 30,1918, petitioner, being desirous of giving certain funds to a hospital, established a trust under the terms of which he transferred 10,000 shares of the aforementioned stock to a trustee to be held by the trustee until the dividends, income, profits, gains and benefits received by him and paid over to, or for the benefit of, the hospital should aggregate $300,000. The amount to be accumulated was later increased to $600,000. The provisions of the trust arrangement having been carried out, the stock was returned to the petitioner, who sold some of it in 1922 and some in 1923, at prices ranging from approximately $90 to $100 per share. There was a provision in the trust agreement under which the trustee was given the right to sell stock or corpus in case the stock or corpus did not produce income as soon as was necessary for the speedy completion of the hospital, but the stock with which we are concerned was not sold by the trustee, but was retransferred by him to the person who originally placed it in trust with him, namely, the petitioner. Stock dividends were received by the trustee during the period in which he held the stock, but a consideration of this feature is not necessary to a decision of the issue before us. As argued by. both parties and in so far as the principle involved in concerned, we may deal with the situation on the basis that the petitioner acquired certain stock in 1915 which he placed in trust for a time during which the income was paid to the trustee and in 1922 and 1923, after the termination of the trust and the retransfer of the stock to the petitioner, the petitioner sold some of the stock, and our question is whether, in determining the gain or loss on these sales, cost should be reduced on account of the creation of the trust.
*1033 The contention of the petitioner is that the creation of the trust and the gift thereby made did not amount to a gift of the stock or any part thereof and, therefore, the gain or loss upon the sale of the stock after the termination of the trust is the difference between the cost or acquisition value in 1915 and sales prices received in 1922 and 1923, without any adjustment on account of the creation and existence of the trust for a period between the dates of acquisition and sale. On the other hand, the Commissioner contends that the effect of the creation of the trust was for the settlor or petitioner to give away a part of his property, namely, an estate therein for the period held by the trustee, and, accordingly, a reduction of the acquisition value or cost should be made on account of such gift.
What we have is an individual who owned stock, a nonwasting asset, and we are asked to decide whether the cost of that stock should be reduced (in determining gain or loss upon its ultimate sale) because an estate for a short period had been carved therefrom, but had expired prior to a sale of the stock. On a careful consideration of the entire situation, we are of the opinion that the petitioner’s contention to the effect that cost is not affected thereby should be sustained. Certainly, the rights which the petitioner had in the stock, the corpus so to speak, were no different (leaving out of consideration the stock dividend feature not here material) after the termination of the trust than they were prior to its creation, and both parties seem agreed, and we think rightfully so, that nothing came to the petitioner, either by gift or sale, in so far as corpus is concerned, which he did not already have, when the trust was terminated and there was a falling in of the precedent estate. (Cf. Miller v. Gearin, 258 Fed. 225; certiorari denied, 250 U. S. 667; and Cryan v. Wardell, 263 Fed. 248.) What then occurred was that the petitioner resumed his right to receive the income from the stock. Similarly, when the trust was created, there was, in effect, only the opposite situation, namely, a cessation to the petitioner of his right to collect the income while the trust agreement was in effect. But these considerations affected income and took nothing from the corpus itself. The stock was not depleted or exhausted through the earning of this income, and we fail to see why the cost thereof should be affected merely because the right to receive the income was vested for a time in the trustee for the benefit of the hospital instead of in the petitioner himself.
Two classes of cases frequently arise where the question involved is a determination of the person taxable on account of income accruing under conditions somewhat analogous to that involved in the case at bar. One class is illustrated by Bing v. Bowers, 22 Fed. (2d) 450 (affd., 26 Fed. (2d) 1017), wherein there was held to be a mere *1034 assignment of income to be earned and that such income was taxable to the grantor, even though received by the grantee, since the property itself or corpus out of which the income was earned was retained, both as to ownership and control, by the grantor, and the assignment was nothing more than a “ gift grant ” of the income in advance of its receipt. See also Arthur H. Van Brunt, 11 B. T. A. 406; Charles F. Colbert, Jr., 12 B. T. A. 565, and J. V. Leydig, 15 B. T. A. 124. The other class of cases is illustrated by Irwin v. Gavit, 268 U. S. 161, wherein the recipient of the income or beneficiary was taxed. In that case, upon the death of one Brady, the residue of an estate was left in trust, a condition of the trust being that one Gavit was to receive the income from a certain part of the estate for a period not exceeding 15 years and upon the happening of certain contingencies, or expiration of a certain period, the fund was to go over. The Supreme Court held that amounts received by Gavit constituted taxable income to him. The argument of the Commissioner is that because in the first class of cases the owner of the corpus is taxable on the income received by the grantee or assignee whereas in the second class, the recipient of the income is taxed, it therefore follows that in the latter situation the income is being taxed to the recipient because the donor or settlor of the trust transferred a part of the property itself or corpus to the beneficiary or trustee for the benefit of the beneficiary in such a manner that there was, in fact, a disposition of a part of the corpus which would require a reduction of the corpus to the extent of the disposition thus made. We are unable, however, to agree that such a conclusion follows from Irwin v. Gavit, suyra. That case, of course, involved the taxability of income arising from a trust estate and did not purport to decide the nature of the interest in corpus, if any, which passed to the trustee for the benefit of Gavit. In fact, the court said:
■»* * * The language quoted leaves no doubt In our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would he income none the less, within the meaning of the statute and the Constitution, and hy popular speech. * * * (Italics supplied.)
And further the court, in commenting on the theory of the courts below, stated that it did not regard it as conclusive whether the bequest carried an interest in the corpus of the fund which produced the income. What was taxed to the beneficiary in that case was income which arose from, and became separated from, the trust fund itself, and can not be said to be authority for the proposition that *1035 there was a gift of corpus to Gavit which would serve to deplete or reduce the trust estate itself.
We fail to see any basic difference between the case now before us and that of the owner of property in fee who leases it for a period of years under a lease in which a bonus is paid at the beginning of the lease and a stipulated rental each year. Not only is the rental received each year income to the lessor, but also the bonus received when the lease is executed and the lessor is not allowed a deduction from such income on account of the capital interest which he had in the fee from which the estate for years was carved. William Robert Farmer, 1 B. T. A. 711; Nelson Land & Oil Co., 3 B. T. A. 315; and O'Day Investment Co., 13 B. T. A. 1230. We do not understand the situation would be different if the lessor should make the lease through a trust arrangement under which he would receive the income. In either event the lessor would be taxable on the entire rental received without a reduction for a return of capital. Certainly, if we are to carry the Commissioner’s theory to its logical conclusion, we must recognize a horizontal severance of capital cost because of the granting of the estate for years and allow the lessor a return of this capital cost through deductions from income arising as this estate is exhausting, but such deductions have been disallowed in the cases referred to above. And to carry the analogy one step further in the case of the sale of the property after the lease had terminated, it could hardly be contended that the cost should be reduced because a lease had existed for a time. To do this would amount to double taxation in that the entire income arising during the existence of the lease was taxable to the lessor or owner of the fee without a deduction on account of a return of capital and then a reduction would also be made of the cost on account of the estate which was carved out through the execution of the lease. And this would be the identical situation with respect to the case with which we are concerned in that if the beneficiary had been taxable instead of nontaxable on account of its charitable nature, we would (following Irwin v. Gavit, supra), tax the entire income arising from this trust arrangement to the beneficiary without a deduction on account of the exhaustion of capital, and then, following the Commissioner’s theory, make a reduction in cost, in case of sale after the termination of the trust, on account of the prior existence of a precedent estate which we have refused to consider as having been exhausted in such a manner as to permit a reduction of the income therefrom through a return of the capital which produced the income. Consistency and sound reasoning are opposed to such results.
*1036 On the whole, we are of the opinion that the creation of the trust did not operate to reduce the cost or acquisition-value basis of the stock placed in trust and sold subsequent to its termination. The stock sold in 1922 and 1923 was the same stock in which the petitioner made an investment in 1915 and we are unable to see that there was any reduction of this investment merely because for a time the petitioner did not receive the income therefrom. What might have been the situation had there been a sale of the securities during the existence of the trust, or what is the proper basis for determining gain or loss on account of the sale of reversionary estates during the existence of precedent estates, are not questions here presented for consideration, though in the various situations of such character suggested by the parties, we fail to see where, consistent with the conclusion herein reach, insurmountable difficulties would be encountered.
Reviewed by the Board.

Judgment will be entered under Bule 50.